UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.: 21-cv-140

| | |
|---|---|
| Moutazbilah Abdul Sattar,<br><br>    Plaintiff,<br>v.<br><br>TD Bank USA, National Association and Rausch Sturm Israel Enerson & Hornik LLP, and Equifax Information Services LLC,<br><br>    Defendants. | **COMPLAINT**<br><br>**WITH JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of TD Bank USA, National Association (hereinafter "Defendant TD Bank"), Rausch Sturm Israel Enerson & Hornik LLP (hereinafter "Defendant Rausch"), and Equifax Information Services LLC (hereinafter "Defendant Equifax") (collectively hereinafter "Defendants") violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq,* and the Fair Debt Practices Act ("FDPA"), 15 U.S.C. § 1692 *et seq.* respectively.

## JURISDICTION

2. Jurisdiction of this Court is proper pursuant to 15 U.S.C. § 1681, 15 U.S.C. §1692, 28 U.S.C. § 1331, and 28 U.S.C. § 1367 for Plaintiff's pendent common state law claims.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct in question occurred in this District, Plaintiff resides in this District, and Defendants transact substantial business in this District.

1

**PARTIES**

4. Plaintiff, Moutazbilah Abdul Sattar (hereinafter "Plaintiff"), is a natural person who resides in the city of Minneapolis, county of Hennepin, state of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant, TD Bank is a national bank that is licensed to do business in the State of Minnesota and regularly conducts business in said State. Defendant TD Bank has a principal place of business located at 2035 Limestone Road, Wilmington, DE 19801. Defendant TD Bank is a "person" as defined in 15 U.S.C. § 1681a(b) and a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

6. Defendant, Rausch a law firm headquartered in Brookfield, Wisconsin at an address of 250 N Sunnyside Road, Suite 3300, Brookfield, WI 53005. Defendant Rausch's registered agent for service is Corporation Service Company, 2345 Rice Street, Suite 230, Roseville, MN 55113. Defendant Rausch is a "person" as defined in 15 U.S.C. § 1681(a)(b); and is a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b). Defendant Rausch is a "debt collector," as defined by § 1692a(6) of the FDCPA, as it uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

7. Defendant, Equifax is a foreign limited liability company organized under the laws of the state of Georgia; is authorized to do business in the state of Minnesota and

regularly conducts business within said State; and has a principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Defendant is a "consumer credit reporting agency," as defined by 15 U.S.C. § 1681a(f) regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing "consumer reports," as defined by 15 U.S.C. § 1681a(d), to third parties.

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

8.  The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

9.  The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information...." 15 U.S.C. 1681(b).

10. The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. 1681e(b).

11. Defendant Equifax, Trans Union LLC ("Trans Union"), and Experian Information Solutions Inc. ("Experian") (collectively hereinafter "credit reporting agencies"), regularly receive information from various sources around the country including

banks, credit unions, automobile dealers, student loan providers, public information vendors and others.

12. These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

13. The credit reporting agencies collects information from thousands of furnishers.

14. The process by which credit reporting agencies receives, sorts, and stores information is largely electronic.

15. Furnishers report credit information to credit reporting agencies through the use of coded tapes that are transmitted to credit reporting agencies on a monthly basis through software known as Metro 2.

16. The credit reporting agencies take the credit information reported by furnishers and creates consumer credit files.

17. The credit reporting agencies maintain credit files on more than 200 million consumers.

18. Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to as "tradelines" within the industry).

19. Consumer credit plays a major role in the lives of American consumers entering into the American marketplace and the economic system in general.  Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range

of other transactions.  Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

20. Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.  15 U.S.C. § 1681(a)(1).

21. The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

22. The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act.  Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

23. Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information and incomplete information.  Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

24. Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

25. The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

26. An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

27. Furthermore, in 1996, Congress, to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act. The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes. These provisions were originally scheduled to sunset in 2003 but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. Federal Trade Commission Staff: 40 Years of Experience

with the Fair Credit Reporting Act, pp. 1, 2, 92. Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

28. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

29. Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

30. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

31. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

32. Metro II codes are used on an industry wide form known within the credit industry as an Automated Credit Dispute Verification ("ACDV") electronic form.

33. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

34. These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

## FACTUAL ALLEGATIONS

35. Sometime in 2016, Plaintiff incurred a consumer debt with Defendant TD Bank for a Target credit card used for family and household purposes, with account number #511786300706****.

36. Plaintiff utilized the card to purchase a used vehicle from a small private dealer.

37. The purchased vehicle was defective and lacked basic safety functions.

38. Plaintiff returned the vehicle and attempted to obtain a refund, but the dealer refused.

39. Pursuant to 15 U.S.C. §1666i, Plaintiff exercised his right to withhold payment on the credit card by virtue of the claims and defenses he had related to the transaction in which the credit card was used as the method of payment.

40. Sometime in August 2019, Plaintiff was served with a Summons and Complaint from Defendant Rausch for the debt owed to Defendant TD Bank.

41. Service of the Summons and Complaint on Plaintiff commenced this state court collection action.

42. Plaintiff answered the Summons and Complaint on August 8, 2019.

43. However, Defendants failed to file the Summons and Complaint with the Minnesota

State Court, specifically Hennepin County within the one year pursuant to Minn. R. Civ. P. § 5.04(a).

44. On or about July 28, 2020, despite knowing that Plaintiff had answered the Summons and Complaint, Defendant Rausch attempted to dismiss the state court case without prejudice, despite knowing that by operation of law the state court lawsuit was dismissed with prejudice (Minn. R. Civ. P. § 5.04(a)), in violation of 15 U.S.C. § 1692f, §1692e and §1692d.

45. Immediately thereafter, Plaintiff checked his credit reports and was shocked to see that despite the debt with Defendant TD Bank being dismissed with prejudice, it was still reporting the account as a charge off and past due in violation of 15 U.S.C. § 1681s-2(a).

46. The state court complaint served by Defendant Rausch on behalf of Defendant TD Bank was dismissed with prejudice, therefore the debt owed by Plaintiff to Defendant TD Bank was also extinguished by the dismissal. Minnesota courts have long held that a dismissal with prejudice "operates as an adjudication on the merits." *Firoved v. Gen. Motors Corp.*, 152 N.W.2d 364, 368 (Minn. 1967); see also *Johnson v. Hunter*, 447 N.W.2d 871, 873 (Minn. 1989) (holding that a dismissal with prejudice, even on a non-substantive ground, is an adjudication on the merits) *Moore v. Robinson Envtl.* (Minn. App. 2020).

47. On or about August 24, 2020, Plaintiff sent a letter to the national credit reporting agencies of Defendant Equifax, Trans Union, and Experian, disputing inaccurate information in his credit report, specifically the Defendant TD Bank account. In his

9

letter, Plaintiff explained the account should be removed due to the Defendants failure to timely file its state court case and therefore it was dismissed with prejudice.

48. The credit reporting agencies sent the dispute to Defendant TD Bank, instructing them to: review all information provided by the credit reporting company; verify the accuracy of the information; provide a response to the dispute; and update their records and systems, as necessary.

49. Despite Plaintiff's attempts at urging Defendant TD Bank to correct its reporting, Defendant TD Bank certified the disputed report as accurate, preserving the account as charged off and past due on Plaintiff's Experian and Trans Union credit reports.

50. Defendant TD Bank violated 15 U.S.C. § 1681s-2(b) when it failed to conduct a reasonable investigation into Plaintiff's dispute and failed to update the account as disputed by populating the compliance condition code to "XB".

51. Defendant TD Bank violated 15 U.S.C. § 1681s-2(b) when it received the notification of disputes from the credit reporting agencies, concerning the Plaintiff's disputed account, and failed to conduct a reasonable investigation. Defendant TD Bank failed to conduct a reasonable investigation because no reasonable investigation could find Plaintiff's alleged account as due and owing since it was dismissed pursuant to Minnesota state law.

52. Defendant Equifax refused and failed to investigate Plaintiff's dispute and instead sent Plaintiff a letter telling him that it could not identify him, despite having all Plaintiff's personal identifying information, including his driver's license and utility bill.

53. Further, the same information Plaintiff provided to Equifax was the same that he

provided to Experian and Trans Union and neither of those credit reporting agencies failed to initiate and investigation regarding the TD Bank tradeline.

54. Defendant Equifax conduct in refusing to investigate in response to Plaintiff's dispute violates 15 U.S.C. §1681i.

55. Defendant Equifax never contacted Plaintiff to gain more information from him despite Plaintiff including his telephone number.

56. Defendant Equifax failed to conduct a reasonable investigation in response to Plaintiff's dispute letter, in violation of 15 U.S.C. §1681i, as it, first, failed to recognize the situation and second failed to delete the disputed account.

57. As a result of Defendants' violations, Plaintiff has suffered damaged to his credit profile/score, reduced credit opportunity, emotional distress, embarrassment, frustration, and anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1), § 1681n and § 1692k.

58. Plaintiff is entitled to attorneys' fees and costs from Defendants pursuant to 15 U.S.C. § 1681o(a)(2), § 1681n and § 1692k.

## TRIAL BY JURY

59. Plaintiff is entitled to, and hereby demands, a trial by jury.  US Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681 *et seq*. – AGAINST DEFENDANT TD BANK

60. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

61. Defendant TD Bank violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it and documentation provided by Plaintiff, and failing to update and/or remove the inaccurate account and balance or, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Codes) Code to "XB."

62. As a result of Defendant TD Bank's violations of the FCRA, Plaintiff has suffered actual damages not limited to out-of-pocket expenses, detriment to his credit rating, emotional distress, embarrassment, mental anguish, anxiety, and humiliation in an amount to be determined at trial.

63. Defendant TD Bank's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

64. Alternatively, Defendant TD Bank's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

65. Plaintiff is entitled to recover actual damages, statutory and punitive damages, and costs and attorneys' fees from Defendant TD Bank in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT – 15 U.S.C § 1692 *et seq.* – AGAINST DEFENDANT RAUSCH

66. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

67. Defendants failed to file the Summons and Complaint with the Minnesota State Court, specifically Hennepin County within the one year pursuant to Minn. R. Civ. P. § 5.04(a).

68. On or about July 28, 2020, despite knowing that Plaintiff had answered the Summons and Complaint, Defendant Rausch attempted to dismiss the state court case without prejudice, despite knowing that by operation of law the state court lawsuit was dismissed with prejudice (Minn. R. Civ. P. § 5.04(a)), in violation of 15 U.S.C. § 1692f, §1692d and §1692e.

69. Pursuant to 15 U.S.C. § 1692k(a), Plaintiff is entitled to recover from Defendant Rausch actual damages, including but not limited to out-of-pocket damages, mental anguish and emotional distress, statutory damages of $1,000.00, costs, and reasonable attorneys' fees.

## COUNT III.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681 *et seq*. – AGAINST DEFENDANT EQUIFAX

70. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71. In August 2020, Plaintiff sent Defendant Equifax dispute letters specifying exactly what information contained on his consumer report was inaccurate.

72. Defendant Equifax failed to conduct a reasonable reinvestigation into Plaintiff's dispute and stated that it could not identify Plaintiff, in violation of 15 U.S.C. § 1681i.

73. Defendant Equifax's conduct in violation of the FCRA has caused Plaintiff actual damages in the form of immense frustration, anger, hopelessness, anxiety, loss of sleep, mental anguish, and emotional distress.

74. Defendant Equifax's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be allowed by the Court, pursuant to 15 U.S.C. § 1681n.

75. Alternatively, Defendant Equifax's conduct, actions, and inactions were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

76. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, and costs and attorneys' fees from Defendant Equifax in an amount to be determined by the Court, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants for:

- actual, statutory and punitive damages, and costs and attorneys' fees for Defendant TD Bank's violations of the FCRA, pursuant to 15 U.S.C §§ 1681n and 1681o, in an amount to be determined at trial;
- actual and statutory damages plus attorney fees and costs for Defendant Rausch's violations of the FDCPA pursuant to 15 U.S.C. § 1692k;
- actual, statutory, and punitive damages, and costs and attorneys' fees for Defendant Equifax's violations of the FCRA, pursuant to 15 U.S.C §§ 1681n and 1681o, in an amount to be determined at trial; and
- for such other and further relief as the Court may deem just and proper.

Dated this 20th day of January, 2021.

By: s/Thomas J. Lyons Jr.
Thomas J. Lyons, Jr., Esq.
Attorney I.D. #: 249646
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:   (651) 704-0907
tommy@consumerjusticecenter.com

Ryan D. Peterson, Esq.
Attorney I.D. #:  0389607
PETERSON LEGAL PLLC
5201 Eden Avenue, Suite 300
Edina, MN  55436
Telephone: 612-367-6568
ryan@peterson.legal

***ATTORNEYS FOR PLAINTIFF***

## **VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF**

I, Moutazbilah Abdul Sattar, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all the facts contained in it are true, to the best of my knowledge, information, and belief, formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Dated this 14 day of January 2021.

                                                             s/Moutazbilah Abdul Sattar
                                                             Moutazbilah Abdul Sattar